In re SUPERIOR EQUIPMENT, INC., Debtor.

FIRST NATIONAL BANK IN STAUNTON, Plaintiff,

v.

SUPERIOR EQUIPMENT, INC., and General Lift Truck Services, Inc., Defendants.

Bankruptcy No. 95–70324.
Adv. No. 95–7041.

United States Bankruptcy Court, C.D. Illinois.

May 7, 1996.

John S. Narmont, Springfield, IL, for Debtor.

Stephen A. Tagge, Springfield, IL, for General Lift.

Ronald L. Pallman, Fairview Heights, IL, for First Nat'l Bank.

## *OPINION*

LARRY L. LESSEN, Bankruptcy Judge.

The issue before the Court is which one of two creditors has a superior security interest in two lift trucks.

The material facts are not in dispute. On July 29, 1993, General Lift Truck Services, Inc. entered into a lease agreement with the Debtor, Superior Equipment, Inc., pursuant to which the Debtor obtained the possession of two Mitsubishi forklift trucks. This was a "true lease"; the lease was for a one year period and did not contain an option to purchase.

On July 31, 1993, the Debtor entered into a written security agreement with the First National Bank in Staunton which granted the Bank a security interest in property, including inventory, whether then owned or thereafter acquired by the Debtor as security for the payment of an indebtedness of the Debtor to the Bank. At the same time, the Bank loaned the Debtor $35,000.

On August 4, 1993, the Bank filed a financing statement with the office of the Illinois Secretary of State. The financing statement showed Superior Equipment as the Debtor, the Bank as the secured party, and the property covered as inventory, equipment, general intangibles, government payments, and accounts and their rights to payments.

On August 27, 1993, General Lift Truck Services filed a financing statement with the Illinois Secretary of State which contained a description of the two Mitsubishi forklift trucks which were subject to the lease. The filing indicated on its face that it was for "informational purposes only".

On May 16, 1994, General Lift and the Debtor entered into a superseding lease with respect to the two Mitsubishi forklifts. This new lease had a duration of sixty months at the end of which time, the Debtor could, at its option, purchase the forklifts for $1.00. This financing lease was a secured transaction governed by Article 9 of the Uniform Commercial Code. *See,* 810 ILCS 5/1–201(37).

In June 1994, General Lift filed two new financing statements. A single Mitsubishi forklift was described in each of the financing statements. There was no indication that the filing was for "informational purposes".

General Lift did not at any time notify the Bank that it had or expected to acquire a purchase money security interest in the trucks.

As part of its ordinary business activities, the Debtor held the two forklifts in question for sale or lease, or to be furnished under contracts of service.

On February 28, 1995, the Debtor filed a petition pursuant to Chapter 11 of the Bankruptcy Code. Pursuant to Court Order, the two forklifts were sold on April 26, 1995, for $22,000. The Bank presently holds these funds in escrow. The Debtor subsequently dismissed the bankruptcy proceeding, but the Bank and General Lift agreed that the Bankruptcy Court should retain jurisdiction over this adversary proceeding to resolve the dispute as to lien priority on the two trucks.

Priorities among conflicting security interests in the same collateral are governed by 810 ILCS 5/9–312, which provides in relevant part as follows:

(3) A perfected purchase money security interest in inventory has priority over a conflicting security interest in the same inventory and also has priority in identifiable cash proceeds received on or before the delivery of the inventory to a buyer if

(a) the purchase money security interest is perfected at the time the debtor receives possession of the inventory; and

(b) the purchase money secured party gives notification in writing to the holder of the conflicting security interest if the holder had filed a financing statement covering the same types of inventory (i) before the date of the filing made by the purchase money secured party, or (ii) before the beginning of the 21 day period where the purchase money security interest is temporarily perfected without filing or possession (subsection (5) of Section 9–304); and

(c) the holder of the conflicting security interest receives the notification within 5 years before the debtor receives possession of the inventory; and

(d) the notification states that the person giving the notice has or expects to acquire a purchase money security interest in inventory of the debtor describing such inventory by item or type.

\* \* \* \* \* \*

(5) In all cases not governed by other rules stated in this section (including cases of purchase money security interests which do not qualify for the special priorities set forth in subsections (3) and (4) of this section), priority between conflicting security interests in the same collateral shall be determined according to the following rules:

(a) Conflicting security interest rank according to priority in time of filing or perfection. Priority dates from the time a filing is first made covering the collateral or the time the security interest is first perfected, whichever is earlier, provided that there is no period thereafter when there is neither filing nor perfection.

(b) So long as conflicting security interests are unperfected, the first to attach has priority.

The Bank notes that a security interest is perfected when it "has attached" and a proper financing statement has been filed. 810 ILCS 5/9–302 and 9–303. The Bank argues that its security interest attached because the Bank has a written security agreement signed by the Debtor which describes inventory as being part of the security granted to the Bank, the Bank gave value (a loan) to the Debtor, and the Debtor had rights in the forklifts. The Bank filed the first financing statement with respect to the forklifts on August 4, 1993. Therefore, the Bank argues that it has the prior security interest under § 9–312(5)(a). The Bank asserts that General Lift Truck Services is not entitled to the special priority given to purchase money security interests in inventory because General Lift never gave written notice to parties holding prior financing statements indicating that it had or expected to acquire a purchase money security interest in inventory of the Debtor.

General Lift notes that possession of the collateral was first obtained by the Debtor on July 29, 1993, prior to the creation of Bank's security interest. Accordingly, General Lift argues that it could not comply with the notice requirement of § 9–312(3)(c) because the Bank did not have a conflicting security interest at that time. Since the lease of July 29, 1993, was a true lease, General Lift argues that it did not have to do anything under the Uniform Commercial Code in order to retain its rights in the equipment. General Lift argues that it did not and could not comply with § 9–312(3) in May of 1994 when the financing lease was entered into because the Debtor already had possession of the inventory. General Lift concludes that it was perfected on July 29, 1993, and therefore has first priority as to the collateral.

There are several problems with General Lift's argument. First, General Lift argues that it was "perfected" on July 29, 1993, when the true lease was entered into. This is a misnomer. Perfection was not an issue at that time because there was no security interest to perfect. The Debtor had possession of the trucks through a true lease; General Lift was the owner of the trucks, not the holder of a security interest in the trucks.

Second, the provisions of § 9–312(3) are an exception to the general rule of § 9–312(5) that the first to file has priority. In order to take advantage of the exception, the holder of a purchase money security interest in inventory must jump through all the hoops set forth in § 9–312(3). *In re Dupont Feed Mill Corp.*, 121 B.R. 555, 560 (S.D.Ind. 1990). Complying with all the requirements of § 9–312(3) is "a feat of some consequence," J. White & R. Summers, *Uniform Commercial Code* § 26–5, at 512 (3d ed. 1988), and courts have strictly construed this exception. *See, MBank Alamo Nat. Ass'n v. Raytheon Co.*, 886 F.2d 1449 (5th Cir.1989); *Kimbell Foods, Inc. v. Republic National Bank of Dallas*, 557 F.2d 491 (5th Cir.1977). In this case, General Lift failed to give written notification of its intent to take a pur-

chase money security interest in the trucks, and therefore General Lift may not take advantage of § 9–312(3).

Third, General Lift argues that it was impossible for it to comply with § 9–312(3) in May of 1994 because the Debtor already had possession of the trucks pursuant to the lease arrangement. Impossibility of compliance is not a recognized defense to the failure to comply with § 9–312(3). The Court believes that General Lift's perceived inability to comply with § 9–312(3) suggests that the exception is not available to General Lift.

Fourth, General Lift's argument turns on when the Debtor acquired "possession" of the trucks. General Lift argues that the Debtor acquired possession of the trucks on July 29, 1993, when the true lease was executed; the Bank argues that possession occurred when the financing lease was executed. It is true that the Debtor first acquired possession of the trucks on July 29, 1993, but possession at that time was pursuant to the true lease. Since § 9–312(3) is limited to purchase money security interests in inventory, the Court believes that the term "possession" in § 9–312(3) must be read to mean possession of the inventory with respect to a purchase money security interest. This is the only reading of § 9–312(3) that makes sense. Accordingly, for purposes of § 9–312(3), the Debtor acquired possession of the trucks on May 16, 1994.

Finally, General Lift argues that awarding priority to the Bank will result in a windfall to the Bank. This argument is not persuasive because General Lift could have protected itself either by demanding cash payment up front or by complying with the specific provisions of § 9–312(3). *See, Peerless Packing Co., Inc. v. Malone & Hyde, Inc.,* 180 W.Va. 267, 270, 376 S.E.2d 161, 164 (1988) (rejects unjust enrichment theory where unsecured creditors could have gained priority by perfecting under § 9–312(3)).

In sum, the priority scheme of § 9–312(3) permits a secured party to advance money to a debtor for additional inventory and obtain priority over a prior perfected security interest in that same inventory. However, the secured party seeking the pro-

tection of § 9–312(3) must comply with the various requirements set forth in § 9–312(3). General Lift failed to comply with all of the requirements of § 9–312(3). Therefore, it is subject to the first to file or perfect rule of § 9–312(3). *In re Tri–State Equipment,* 792 F.2d 967, 969 n. 2 (10th Cir.1986). The Bank was the first to file. Accordingly, the Bank has priority over General Lift as to the two lift trucks.

For the foregoing reasons, the Court finds that the First National Bank of Staunton has a superior security interest in two lift trucks to that of General Lift Truck Services, Inc.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.

### *ORDER*

For the reasons set forth in an Opinion entered this day,

IT IS THEREFORE ORDERED that the First National Bank of Staunton has a superior security interest over General Lift Truck Services, Inc. in the two lift trucks.